## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

DEBORAH VIGEANT, RHONDA WOOD, ELIZABETH MILLANE, DOUGLAS ECKELBECKER, AMANDA ECKELBECKER, RODNEY UTING, and LAWRENCE ANDERSON, and all other individuals similarly situated,

> Plaintiffs,

vs.

MICHAEL MEEK, PAUL HARMEL, P. ROBERT LARSON, DONALD GOLDFUS, JOHN ANDERSON, BRUCE NICHOLSON, BERNIE ALRICH, TED KOENECKE, GLENN ELO, NEWPORT TRUST COMPANY, and LIFETOUCH INC.,

> Defendants.

Case No.: 0:18-cv-00577-JNE-TNL

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NEWPORT TRUST COMPANY'S MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

Gabrielle Gould (admitted *pro hac vice*)
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 813-8800
Facsimile: (212) 335-3333
ggould@goodwinlaw.com

James O. Fleckner (admitted *pro hac vice*)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
Telephone: (617) 570-1000
Facsimile: (617) 523-1231
jfleckner@goodwinlaw.com

David L. Hashmall (#138162)
FELHABER LARSON
220 South Sixth Street, Suite 2200
Minneapolis, MN 55402-4504
Telephone: (612) 339-6321
Facsimile: (612) 338-0535
dhashmall@felhaber.com

*Attorneys for Defendant Newport Trust Company*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ................................................................................ 3

    A.    The ESOP .................................................................................... 3

    B.    Annual Valuations of the ESOP .................................................. 4

    C.    The Shutterfly Sale ...................................................................... 6

    D.    2017 ESOP Distributions ............................................................ 8

    E.    Plaintiffs' Sparse Allegations Against Newport Trust................. 8

ARGUMENT........................................................................................................ 9

I.    The Complaint Should be Dismissed for Lack of Subject Matter Jurisdiction Because Plaintiffs Lack Constitutional Standing to Sue Newport Trust. ............... 9

    A.    Plaintiffs Cannot Show Any Actual Injury Resulting from Newport Trust's Approval of the Shutterfly Sale. .................................... 12

    B.    Plaintiffs Cannot Show Any Actual Injury Resulting from Newport Trust's Alleged Purchase or Holding of Lifetouch Shares in 2017. ........... 13

II.    Plaintiffs' Duty-of-Prudence Claim Is Implausible and Cannot Survive Scrutiny Under Rule 12(b)(6)...................................................................... 14

    A.    Plaintiffs' Claim Against Newport Trust is Implausible In Light of the Ongoing Sales Process. ................................................. 16

    B.    The Principles Underlying the United States Supreme Court's Ruling in *Fifth Third Bankcorp v. Dudenhoeffer* Support a 12(b)(6) Dismissal. ....... 19

    CONCLUSION ........................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allen v. Greatbank Trust Co.*,
   835 F.3d 670 (7th Cir. 2016) ..........................................................................16, 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................14, 15, 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................5, 14

*Brown v. Medtronic, Inc.*,
   628 F.3d 451 (8th Cir. 2010) ....................................................................... *passim*

*Disability Support Alliance v. Geller Family Ltd. P'ship III*,
   160 F. Supp. 3d 1133 (D. Minn. 2016)..............................................................10, 11

*Erickson v. AmeriCold Logistics, LLC*,
   Civil No. 17-1176, 2018 WL 20148883 (D. Minn. May 2, 2018)..........................11

*Fifth Third Bankcorp v. Dudenhoeffer*,
   134 S. Ct. 2459 (2014)..................................................................14, 15, 19, 20

*Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*,
   493 U.S. 331 (1990)............................................................................................10

*Hill v. Hill Bros. Constr. Co.*,
   Cause No. 3:14cv213-SA-SAA, 2016 WL 1252983 (N.D. Miss. Mar. 28, 2016) .................................................................................................................19

*In re Idearc ERISA Litig.*,
   No. 3:09-CV-2354-N, 2016 WL 7189980 (N.D. Tex. Feb. 26, 2016) ...................18

*Kronholm v. Fed. Deposit Ins. Corp.*,
   915 F.2d 1171 (8th Cir. 1990) ..........................................................................10

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)............................................................................................10

*Malkani v. Clark Consulting, Inc.*,
   441 F. App'x 164 (4th Cir. 2011) ....................................................................11

*Markewich ex rel. Medtronic, Inc. v. Collins*,
   622 F. Supp. 2d 802 (D. Minn. 2009).................................................................7

*Meiners v. Wells Fargo & Co.*,
   Civil No. 16-3981, 2017 WL 2303968 (D. Minn. May 25, 2017)..........................15

*Osborn v. United States*,
   918 F.2d 724 (8th Cir. 1990) .............................................................................4, 12

*Park v. Forest Serv. of U.S.*,
   205 F.3d 1034 (8th Cir. 2000) ...................................................................................11

*Soehnlen v. Fleet Owners Ins. Fund*,
   844 F.3d 576 (6th Cir. 2016) .....................................................................................11

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)........................................................................................10, 11

*Stark v. Bank of Am., N.A.*,
   No. Civ. 14-2931, 2015 WL 756938 (D. Minn. Feb. 23, 2015) ...................................5

*Summers v. Earth Island Institute*,
   555 U.S. 488 (2009)...................................................................................................10

*In re Target Corp. Sec. Litig.*,
   275 F. Supp. 3d 1063 (D. Minn. 2017).....................................................................15

*Tibble v. Edison Int'l.*,
   135 S. Ct. 1823 (2015)...............................................................................................18

*V.S. Ltd. P'ship v. Dep't of Hous. & Urban Dev.*,
   235 F.3d 1109 (8th Cir. 2000) ..................................................................................10

*Warth v. Seldin*,
   422 U.S. 490 (1975)...................................................................................................10

*In re Wells Fargo ERISA 401(k) Litig.*,
   Case No. 16-cv-3405, 2017 WL 4220439 (D. Minn. Sept. 21, 2017)......................15

**Statutes**

29 U.S.C. § 1104(a)(1)(B) ..............................................................................15, 16

**Other Authorities**

Fed. R. Civ. P. 12................................................................................... *passim*

Defendant Newport Trust Company ("Newport Trust") respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiffs' Amended Class Action Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

At its core, this case seeks redress for alleged violations of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), by entities and individuals other than Defendant Newport Trust Company ("Newport Trust"). Plaintiffs are participants in an Employee Stock Ownership Plan ("ESOP") of Lifetouch, Inc. ("Lifetouch") who have sued various ESOP fiduciaries. The bulk of their claims concern alleged fiduciary misconduct in 2015 and 2016, before Newport Trust became the ESOP trustee. As Plaintiffs allege, Newport Trust acquired certain business lines and assets of Evercore Trust Company, N.A. ("Evercore") in October 2017, and Evercore itself did not become ESOP trustee until May 2017.[1] Accordingly, none of Plaintiffs' myriad allegations of misconduct relating to ESOP contributions, distributions or valuations in 2015 or 2016 can reasonably be read to state any claim against Newport Trust.

With respect to the 2017-2018 time period, Plaintiffs also can state no claim against Newport Trust. During that period, Plaintiffs allege imprudence in connection with (1) the approval of the acquisition of Lifetouch by Shutterfly, Inc. ("Shutterfly") at an announced purchase price of $825 million; (2) the use of Lifetouch's 2017

---

[1] As set forth more fully below (see *infra* note 4), Plaintiffs are mistaken in this regard and Evercore was not, in fact, appointed as trustee until June 28, 2017.

contribution to the ESOP to purchase Lifetouch shares; and (3) the failure to force the divestiture of Lifetouch stock from the ESOP in the latter half of 2017 while a sales process for Lifetouch was ongoing.  (*See* Am. Compl. at ¶¶ 56, 63, 64, 70.)

Critically, Plaintiffs do not challenge Evercore's valuation of Lifetouch stock as of June 30, 2017 at $56 per share.  Rather, all of Plaintiffs' accusations of imprudence are based on the inaccurate supposition that the value of Lifetouch stock later declined because the publicly-announced price for Shutterfly's acquisition of Lifetouch was $825 million.  (Am. Compl. at ¶ 70.)  Plaintiffs are simply wrong.  After customary purchase price adjustments, the total price that Shutterfly has actually paid to date to acquire Lifetouch stock is $56.01 per share, or $963 million in total.

Because the value of Lifetouch stock did not decline between Evercore's $56 valuation as of June 30, 2017 and the 2018 Shutterfly acquisition, Plaintiffs cannot satisfy the basic requirement of constitutional standing for any claim against Newport Trust – a showing of an injury in fact.  The price Shutterfly paid for Lifetouch's stock and the value of the stock endorsed by Plaintiffs are one and the same, so neither the ESOP nor Plaintiffs sustained any injury from Newport Trust's approval of the sale.  Nor can Plaintiffs show any injury from any alleged purchase or non-divestiture of Lifetouch shares held by the ESOP while Newport Trust was its trustee.

In light of the foregoing, no award by the Court in Plaintiffs' favor against Newport Trust could redress any injury Plaintiffs claim to have suffered because such injury does not exist.  Plaintiffs' allegations are therefore insufficient to vest the Court

with subject matter jurisdiction over their claim against Newport Trust, and dismissal of that claim is required.

Even if the Court were to find that subject matter jurisdiction had been established, dismissal of Plaintiffs' claim against Newport Trust is warranted because the claim itself is implausible.  As Plaintiffs themselves acknowledge, all of Newport Trust's actions were undertaken while a sales process for Lifetouch was ongoing, and after other efforts prior to Newport Trust's engagement to improve Lifetouch's declining financial condition short of a sale had proven unsuccessful. (*See* Am. Compl. ¶¶ 75-76.)  Under these circumstances, there can be no question that Newport Trust's decision *not* to try to cause Lifetouch to repurchase approximately $1 billion in Lifetouch stock from the ESOP and/or *not* to resign as ESOP trustee were the only prudent decisions for it to make.

As to Newport Trust, the Amended Complaint should be dismissed with prejudice in its entirety.

## FACTUAL BACKGROUND

### A.     The ESOP

The ESOP is a defined contribution plan that owned 100% of the stock of Lifetouch, a professional photography company.  (*Id.* at ¶¶ 4, 45.)  The ESOP permits eligible employees to acquire a beneficial interest in Lifetouch and accumulate retirement savings.  (*Id.* at ¶ 8.)  Following the commencement of their employment, Lifetouch employees who have been paid for at least 700 hours of service during an ESOP year are eligible to participate in the ESOP.  (*Id.* at ¶ 45.)

Lifetouch generally made all contributions to the ESOP, and those contributions were primarily invested in Lifetouch stock.  (*Id.* at ¶ 8.)  The ESOP makes distributions to retired participants two times per calendar year – once in April and once in December. (Glasgow Decl. ¶ 11.)[2]  Distributions from the ESOP involve the repurchase by Lifetouch of an ESOP participant's Lifetouch stock from the ESOP at the share value determined by the ESOP trustee as of the June 30 immediately preceding the repurchase date, and a corresponding cash payment by the ESOP to the participant.  (Am. Compl. at ¶ 55.)

**B.      Annual Valuations of the ESOP**

The ESOP trustee was responsible for annual valuations of Lifetouch stock.  (*See id.* at ¶¶ 14, 54.)  To determine the fair market value for the stock, the trustee obtained an opinion from an independent financial advisor that it appointed.  (*Id.* at ¶ 54.)  As set forth in the summary plan description for the ESOP referred to in the Amended Complaint, because the ESOP year ran from July 1 to June 30, the valuation for a given year would be computed "as of" June 30 of that year.  (Glasgow Decl. ¶ 5 & Ex. 2 § 2m; *see also* Am. Compl. ¶ 44.)[3]  Thus, work on annual valuations would commence shortly after June 30 and be completed in the succeeding months.  (Glasgow Decl. ¶¶ 5, 10.)

---

[2]   The abbreviation "Glasgow Decl." refers to the Declaration of William Glasgow, sworn to June 15, 2018 that is submitted herewith in support of Newport Trust's motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction.  Where, as here, a defendant asserts a factual challenge to an assertion of subject matter jurisdiction, the Court is empowered to consider evidence outside of the pleadings.  *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).

[3]   Plaintiffs' repeated allegation that the ESOP was valued "on" June 30 of each ESOP year (*see, e.g.,* Am. Compl. at ¶¶ 14, 49, 54, 64) is flatly contradicted by the face of the final 2017 valuation letter, and by the summary plan description, each of which is incorporated by reference into the Amended Complaint (*See id.* at ¶¶ 44, 58; Glasgow

In 2015, the ESOP trustee assigned a value of $93 per share to the stock, and, in 2016, the ESOP trustee assigned a value of $88 per share to the stock. (Am. Compl. ¶ 14.) Both of these valuations occurred before Newport Trust or Evercore became the ESOP trustee. (*Id.* at ¶ 43.) Evercore was appointed as the ESOP trustee on June 28, 2017,[4] and Newport Trust was appointed as successor trustee in connection with Newport Trust's acquisition of certain business assets of Evercore, effective October 19, 2017. (Glasgow Decl. ¶¶ 4, 14.) Pursuant to the Lifetouch Inc. Employee Stock Ownership Trust Agreement, restated effective June 28, 2017 (the "Trust Agreement"), Evercore was appointed trustee of the ESOP. (*See* Glasgow Decl., Ex. 1 at 1.) Following its appointment, Evercore had the authority and power to "[d]etermine the fair market value of [Lifetouch stock] as of the last day of each Plan Year of the Plan." (*Id.* § C(6); *see also* ¶¶ 43 (quoting the Trust Agreement).)

---

Decl., Exs. 2, 3.) Accordingly, the allegation is not entitled to credit for purposes of the instant motion. *See Brown v. Medtronic, Inc.,* 628 F.3d 451, 459-60 (8th Cir. 2010) ("[D]ocuments attached to or incorporated within a complaint are considered part of the pleadings, and courts may look at such documents for all purposes . . . including to determine whether a plaintiff has stated a plausible claim.") (citing *M.M. Silta v. Cleveland Cliffs, Inc.,* 616 F.3d 872, 876 (8th Cir. 2010).)

[4]  Plaintiffs' allegation that "Evercore likely began its work as Trustee" before June 28, 2017 "if for no other reason than June 30, 2017 . . . was the date on which the Trustee provided the annual valuation of Lifetouch's stock" is not only contradicted by documents incorporated into the Amended Complaint by reference (*see* Am. Compl. ¶¶ 44, 58; Glasgow Decl., Exs. 2, 3), but also entirely speculative and deserves no credit for purposes of the instant motion. "Speculative allegations are not enough to survive a motion to dismiss." *Stark v. Bank of Am., N.A.,* No. Civ. 14-2931 ADM/FLN, 2015 WL 756938, at *4 (D. Minn. Feb. 23, 2015); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Evercore's valuation of Lifetouch stock as of June 30, 2017 assigned a value of $56 per share. (Am. Compl. ¶¶ 14, 17.) The final valuation letter for the 2017 valuation was issued on September 29, 2017. (Glasgow Decl. ¶ 10 & Ex. 3.)

### C. The Shutterfly Sale

Plaintiffs allege that, beginning in 2015, with the growth of digital photography, Lifetouch's financial fortunes began to decline. (Am. Compl. ¶ 75.) Lifetouch allegedly was not able to make the required investments in new technology to keep pace with its competitors or consumer tastes that evolved from wall portraits and photo albums to digital photos and cloud-based storage mechanisms. (*Id.*)

Lifetouch put itself up for sale after it became apparent that cost-cutting measures such as portrait studio and production facility closures were insufficient to ensure Lifetouch's continued viability. (*See id.* at ¶¶ 75-76; Glasgow Decl. ¶ 9.) On behalf of the ESOP, Newport Trust evaluated the potential acquisition by a third party of all of the outstanding equity of Lifetouch held by the ESOP. (*See* Am. Compl. ¶ 56.) In connection with this role, Newport Trust had the responsibility of approving a contemplated sale of the Lifetouch stock owned by the ESOP on the ESOP's behalf. (*Id.*)

Ultimately, Lifetouch decided to sell itself to Shutterfly, and Newport Trust approved the sale. (*Id.* at ¶ 56; *see also* at ¶¶ 68, 70; Glasgow Decl. ¶¶ 16, 18.) The Amended Complaint alleges that "Lifetouch and Shutterfly may have commenced acquisition discussions as early as August 2017," before the completion of the 2017 annual valuation. (Am. Compl. ¶ 68; *see* Glasgow Decl. ¶ 10.)

The reported price for the Shutterfly acquisition was $825 million in cash.  (*See* Am. Compl. ¶ 66.)  However, as is customary in any stock purchase acquisition, the reported price did not account for various purchase price adjustments to which the parties had agreed prior to closing.  (*See* Glasgow Decl. ¶ 21.)  Taking those adjustments into account, the price per share of Shutterfly's acquisition of Lifetouch paid to date is $56.01, for a total purchase price of at least $963 million.  (*Id.*)  There is the possibility that the total price per share paid by Shutterfly will exceed $56.01 once additional positive adjustments are made.  (*Id.* ¶¶ 21, 22.)  Indeed, in a Form 8-K/A on June 11, 2018, Shutterfly estimated that the preliminary purchase price consideration for the sale would be in excess of $983 million.  (*Id.* ¶ 21 & Ex. 6.)[5]

All Lifetouch ESOP participants were apprised of the facts that the publicly-announced $825 million sales price was subject to adjustments, and that the ultimate sales price would be close to Evercore's $56 per share valuation, in a letter from Lifetouch CEO, Michael Meek.  (*See* Glasgow Decl., Ex. 5.)  In that letter, which was sent before Plaintiffs filed their Amended Complaint, Mr. Meek wrote:

> On January 30, 2018, Lifetouch Inc. and the Trustee of the Lifetouch Employee Stock Ownership Plan and Trust (ESOP) agreed to sell Lifetouch Inc. to Shutterfly, Inc. for a purchase price of $825 million.  In addition, the ESOP *will receive credit for the cash and investments of the Company as of the transaction closing date, reduced by certain adjustments (including for net working capital) and closing costs.*

---

[5]  As this Court has recognized, "public filings required to be filed with the SEC, can be considered on a motion to dismiss."  *Markewich ex rel. Medtronic, Inc. v. Collins*, 622 F. Supp. 2d 802, 806 (D. Minn. 2009) (quotation omitted).

As of the date of this letter, we estimate *that the value per share paid to ESOP participants will be near the value per share determined by the Trustee as of June 30, 2017.*

(*Id.* (emphases added).)

### D.     2017 ESOP Distributions

The ESOP made distributions to those participants entitled to such distributions in April and December 2017.   (Glasgow Decl. ¶ 11.)   Because neither Evercore nor Newport Trust had acceded to the role of ESOP trustee by April 2017, they had no involvement in the former distribution which was made based upon the $88 per share value determined for Lifetouch stock as of June 30, 2016.  (*See* Am. Compl. ¶¶ 14, 43.) After Newport Trust became trustee, it authorized distributions to ESOP participants in December 2017 at the $56 per share value determined for Lifetouch stock as of June 30, 2017.  (Glasgow Decl. ¶ 12.)  Lifetouch's contribution to the ESOP in December 2017 was used in its entirety to fund these distributions.  (*Id.*)

### E.     Plaintiffs' Sparse Allegations Against Newport Trust

Plaintiffs contend that "each Trustee" of the Lifetouch ESOP "is responsible for the breaches of fiduciary duty that occurred during that Trustee's tenure in the role." (Am. Compl. ¶ 10 n.1.)  Accordingly, accepting their allegations as true, Plaintiffs assert no claims against Newport Trust, or for that matter Evercore, for any of the conduct alleged in the Amended Complaint occurring prior to May 2017.  (*See id.* at ¶ 43.)

The Amended Complaint's allegations of misconduct by any fiduciary of the ESOP after April 2017 are scant.  Although Plaintiffs claim that valuations of Lifetouch stock generated in 2015 and 2016 were "inflated" and "improper," they raise no

challenge to the $56 per share valuation for Lifetouch stock calculated as of June 30, 2017 by Evercore.  (*See, e.g., id.* at ¶¶ 60, 61.)

Presumably in an effort to obfuscate their own inability to show wrongdoing in 2017, Plaintiffs lump all of the ESOP trustee defendants together, and cite the same conduct in support of their claims that the "Trustee" breached its duty of prudence, by (i) "appro[ving] the acquisition of Lifetouch by Shutterfly on a date before January 30, 2018 at a price below market value"; and (ii) "allow[ing] Plan assets to remain invested, and continu[ing to invest] new Plan assets, in Lifetouch stock."  (*Id.* at ¶ 56.)  To redress the alleged harm resulting from these actions, Plaintiffs seek a declaratory judgment, an order compelling return of losses to the ESOP, an injunction restraining further violations of ERISA, actual damages, and costs and attorneys' fees.  (*Id.* at 33-34.)[6]

As to Newport Trust, the entirety of the Amended Complaint should be dismissed with prejudice.

## **ARGUMENT**

## I.     **The Complaint Should be Dismissed for Lack of Subject Matter Jurisdiction Because Plaintiffs Lack Constitutional Standing to Sue Newport Trust.**

Plaintiffs' duty-of-prudence claim against Newport Trust should be dismissed under Rule 12(b)(1) because the Amended Complaint fails to allege facts demonstrating that Plaintiffs have constitutional standing to bring the claim.

---

[6] Plaintiffs also seek the imposition of a constructive trust on amounts by which the "Defendants" were unjustly enriched, and an order against the Board Defendants.  (Am. Compl. ¶ 33.)

Plaintiffs bear the burden of establishing constitutional standing. *See V.S. Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000). Whether a plaintiff has established the elements of Article III standing is a "threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *see Kronholm v. Fed. Deposit Ins. Corp.*, 915 F.2d 1171, 1174 (8th Cir. 1990) (subject-matter jurisdiction must be assured in every federal case). At the pleading stage, a plaintiff must "clearly allege facts demonstrating each element" of Article III standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quotations omitted); *see Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009) (plaintiff "bears the burden of showing that he has standing for each type of relief sought").

As this Court has found:

> The irreducible constitutional minimum of standing requires the plaintiff to show he has suffered an injury that is fairly traceable to the challenged conduct of the defendant and that will likely be redressed by a favorable decision.

*Disability Support Alliance v. Geller Family Ltd. P'ship III*, 160 F. Supp. 3d 1133, 1136 (D. Minn. 2016) (Ericksen, J.) (internal quotations omitted); *see Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 335 (1990) (satisfaction of Article III's requirements requires plaintiffs to show they have "personally . . . suffered some actual or threatened injury as a result of the putatively illegal conduct" (quotations omitted).) The injury in question must be "concrete and particularized." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To be concrete, an "injury must be *de facto*; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548.

A "bare procedural violation, divorced from any concrete harm," does not satisfy Article III's injury-in-fact requirements. *Id.* at 1549. Accordingly, the "mere allegation of a breach of fiduciary duty under ERISA, without more, is insufficient" to establish constitutional standing. *Erickson v. AmeriCold Logistics, LLC*, Civil No. 17-1176 (DSD/DTS), 2018 WL 20148883, at *3 (D. Minn. May 2, 2018); *see also Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581 (6th Cir. 2016) (ERISA plaintiffs "are not absolved from showing that the elements of Article III are met.") In the ERISA context, "at a minimum, a plaintiff must allege a net loss in investment value that is fairly traceable to the defendants' challenged actions." *Brown v. Medtronic, Inc.*, 628 F.3d 451, 455 (8th Cir. 2010).

Where, as here, a plaintiff lacks constitutional standing, a federal court lacks subject matter jurisdiction over the plaintiff's claims and "must dismiss the case." *Erickson*, 2018 WL 20148883, at *2 (dismissing ERISA claims for failure to allege injury-in-fact); *see also Malkani v. Clark Consulting, Inc.*, 441 F. App'x 164, 165 (4th Cir. 2011) (affirming 12(b)(1) dismissal of ERISA claim for failure to establish standing under Article III). Indeed, absent a showing of some actual or prospective harm, no favorable ruling by the court can satisfy Article III's redressability requirement. *See Park v. Forest Serv. of U.S.*, 205 F.3d 1034, 1037-38, 1040 (8th Cir. 2000) (plaintiff lacked standing to seek injunctive relief because she could not satisfy burden to show a "real and immediate threat"); *Disability Support Alliance*, 160 F. Supp. 3d at 1138 (dismissing claim for lack of standing because "it is not likely" that plaintiffs' "alleged injury will be redressed by a favorable decision").

11

A. **Plaintiffs Cannot Show Any Actual Injury Resulting from Newport Trust's Approval of the Shutterfly Sale.**

The Amended Complaint's allegation that Plaintiffs suffered an actual injury as a result of Newport Trust's approval of the Shutterfly sale has no basis in fact.  Where, as here, a factual attack as to subject matter jurisdiction has been asserted, "the Court considers matters outside the pleadings and the non-moving party does not have the benefit of 12(b)(6) safeguards."  *Id.* at 1136.  The Court must "weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990) (internal quotations omitted).

Plaintiffs' conclusory allegation that the Shutterfly sale resulted in a price per share for Lifetouch stock less than $56 (Am. Compl. ¶ 70), is simply untrue.  All Lifetouch ESOP participants were advised of the fact that the $825 million Shutterfly acquisition price was subject to adjustments well before Plaintiffs filed their Amended Complaint and specifically told that, "[i]n addition" to the reported purchase price, the ESOP would "receive credit for the cash and investments of the Company as of the transaction closing date, reduced by certain adjustments (including for net working capital) and closing costs."  (Glasgow Decl., Ex. 5.)  Lifetouch further advised ESOP participants that Lifetouch estimated that "the value per share paid to ESOP participants" following the Shutterfly sale would "be near the value per share determined by the Trustee as of June 30, 2017" – that is, near $56 per share.  (*Id*.)  Lifetouch's estimates concerning the value per share implicated by the Shutterfly sale proved correct.  The sale

resulted in a net price per share of Lifetouch stock of at least $56.01.  (Glasgow Decl. ¶ 21.)

Because the Shutterfly sale did not result in any "net loss in investment value" to the ESOP as compared to the $56 per share value that Plaintiffs do not challenge, Plaintiffs cannot make the "minimum" showing required to establish constitutional standing for an ERISA claim.  *Brown*, 628 F.3d at 455.[7]  Subject matter jurisdiction over Plaintiffs' claim against Newport Trust is lacking and the claim must be dismissed.

### B.   Plaintiffs Cannot Show Any Actual Injury Resulting from Newport Trust's Alleged Purchase or Holding of Lifetouch Shares in 2017.

The Amended Complaint's allegation that Newport Trust "acted improperly when it used the 2017 employer contribution to purchase Lifetouch stock" for the ESOP (Am. Compl. at ¶ 64) also has no basis in fact.  To support their accusation of imprudence, Plaintiffs contend that it is "reasonable to infer" that, by the time Newport Trust received Lifetouch's contribution, Newport Trust knew that Lifetouch was up for sale "and that further stock price declines were in the offing."  (*Id.* at ¶ 67; *see also id.* at ¶ 65 (claiming Newport Trust was aware that the stock price would drop in 2018).)  Again, the entirety of Plaintiffs' claim rests on the baseless assertion that the value of Lifetouch stock declined between the 2017 annual valuation and the Shutterfly sale.  But, because the value of the Lifetouch shares implicated by the Shutterfly sale was, in fact, marginally

---

[7]   Plaintiffs' suggestion that that Lifetouch's stock was evaluated by "the very same Independent Appraiser" for purposes of both the Shutterfly sale and the 2017 annual valuation (Am. Compl. ¶ 70) is also factually incorrect.  As set forth in the accompanying Glasgow Decl., Newport Trust retained a separate financial adviser – Duff & Phelps – for purposes of the sale.  (Glasgow Decl. ¶ 15).  Accordingly, Plaintiffs can assert no actual injury stemming from Newport Trust's failure to retain a different appraiser.

greater than the price assigned in the 2017 valuation, Plaintiffs can show no injury from Newport Trust's use of the 2017 Lifetouch contribution to make distributions to eligible ESOP participants based upon a value of their Lifetouch shares at $56 per share.

In addition, because the value of Lifetouch shares did not decline, Plaintiffs' duty-of-prudence claim against Newport Trust for continuing to hold Lifetouch stock in the ESOP in 2017 also fails.

## II.      Plaintiffs' Duty-of-Prudence Claim Is Implausible and Cannot Survive Scrutiny Under Rule 12(b)(6).

Even if the Court concludes that Plaintiffs have satisfied their burden to demonstrate Article III standing, Plaintiffs' duty-of-prudence claim still cannot survive beyond the instant motion.  "The standing inquiry is merely a threshold inquiry" and Rule 12(b)(6) presents "higher hurdles" that Plaintiffs have failed to meet.  *Brown*, 628 F.3d at 459.  The facial plausibility standard discussed in the United States Supreme Court's decisions in *Twombly* and *Iqbal* applies to ERISA claims.  *See Fifth Third Bankcorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014) (remanding ERISA claim for evaluation under *Twombly / Iqbal* standards).

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  Instead, it must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Brown*, 628 F.3d at 460 (quoting *Iqbal*).  "Although a complaint need not contain detailed factual allegations, it must raise a right of relief above the speculative level." *Meiners v. Wells Fargo & Co.*, Civil No. 16-3981 (DSD/FLN), 2017 WL 2303968, at *1 (D. Minn. May 25, 2017) (citing *Twombly*), *appeal docketed,* No. 17-2397 (8th Cir. June 23, 2017).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  As the United States Supreme Court noted in *Fifth Third Bankcorp v. Dudenhoeffer*, in an ERISA case, "a careful, context-sensitive scrutiny of a complaint's allegations" is the appropriate way for a court to "divide the plausible sheep from the meritless goats."  134 S. Ct. at 2470.

The sole claim advanced against Newport Trust is one for breach of the duty of prudence. The duty of prudence requires an ERISA fiduciary to:

> [D]ischarge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

29 U.S.C. § 1104(a)(1)(B).  The "prudence of a fiduciary's action depends on the information available to the fiduciary at the time of the decision, and assertions of imprudence devoid of contextual support are insufficient to state a claim under ERISA." *In re Target Corp. Sec. Litig.*, 275 F. Supp. 3d 1063, 1088 (D. Minn. 2017) (Ericksen, J.); *see Meiners*, 2017 WL 2303968, at *4 (finding ERISA claim "must be dismissed" because "allegations do not give rise to an inference of a breach of fiduciary duty"); *In re*

15

*Wells Fargo ERISA 401(k) Litig.*, Case No. 16-cv-3405 (PJS/BRT), 2017 WL 4220439, at *7 (D. Minn. Sept. 21, 2017) (dismissing ERISA claim for failure to "plead specific facts to make [allegations] plausible").

### A.   Plaintiffs' Claim Against Newport Trust is Implausible In Light of the Ongoing Sales Process.

Plaintiffs' conclusory allegations that Newport Trust should have caused Lifetouch to repurchase all Lifetouch stock from the ESOP or, failing that, resigned as trustee, are insufficient to state a plausible claim for relief.   (*See* Am. Compl. ¶ 63.) Newport Trust facilitated and approved the very divestiture of Lifetouch shares from the ESOP that Plaintiffs claim should have happened in this case, and in a way that protected the ESOP and its participants.

ERISA requires that the prudence of a fiduciary's actions be evaluated "under the circumstances then prevailing."  *See* 29 U.S.C. § 1104(a)(1)(B); *see Allen v. Greatbank Trust Co.*, 835 F.3d 670, 674 (7th Cir. 2016) (plaintiffs must "provide the context necessary to show a plausible claim for relief").   Here, the circumstances prevailing during Newport Trust's tenure as trustee were an ongoing effort to sell Lifetouch to a third party.   (*See* Am. Compl. ¶¶ 65, 66, 67; *see also id.* at ¶ 68 (suggesting that negotiations may have commenced "as early as August 2017".)   Ignoring context altogether, Plaintiffs claim that Newport Trust breached the duty of prudence by failing to take affirmative steps that would have derailed the sales process.

Plaintiffs' claim that Newport Trust acted imprudently by failing to force Lifetouch to repurchase "just over $1 billion" in Lifetouch stock from the ESOP is not

only implausible, it is absurd. (*Id.* at ¶ 70.) According to Plaintiffs, by the time Newport Trust became ESOP trustee, Lifetouch was "in trouble and struggling to turn itself around" (*id.* ¶ 77) and had been "forced to close" portrait studios and a production facility to survive (*id.* ¶ 75). Taking these allegations as true, Plaintiffs cannot credibly suggest – and, presumably for this reason have failed even to allege – that Lifetouch had $1 billion at its disposal to buy out all of the ESOP participants.

But even assuming that Plaintiffs had plausibly alleged the possibility that Lifetouch could afford to buy out ESOP participants in the latter half of 2017, the suggestion that it would have been prudent for Newport Trust to force Lifetouch to do so, would remain wholly implausible. As a matter of common sense, to the extent that it did not upend the sales process altogether, the wholesale divestiture of Lifetouch stock from the ESOP would have resulted in far lower bids for Lifetouch stock than the company ultimately received. *See Brown*, 628 F.3d at 461 (finding suggestion that divestiture of stock worth more than $1 billion from ERISA plan "without creating . . . a much more severe impact on stock price" was "fanciful"). Accordingly, Plaintiffs' claim that ESOP participants, in particular, those still in Lifetouch's employ, would somehow have been *better off* if Newport Trust had behaved differently simply makes no sense. *See Iqbal*, 556 U.S. at 674 (courts not required to sustain claims that defy common sense).

Similarly, Plaintiffs' contention that, if it was not able to force Lifetouch to buy out ESOP participants, Newport Trust should have resigned as trustee (Am. Compl. ¶ 63), states no plausible duty-of-prudence claim. An abrupt resignation by Newport Trust during the ongoing sales process would likely have signaled to prospective buyers that

17

something was wrong at Lifetouch and compromised the company's ability to sell itself. Moreover, Plaintiffs have not even alleged that, had Newport Trust resigned, a new trustee would have been able to force the divestiture that Newport Trust could not accomplish. Dismissal is therefore required. *See In re Idearc ERISA Litig.*, No. 3:09-CV-2354-N, 2016 WL 7189980, at *6 (N.D. Tex. Feb. 26, 2016) (rejecting claim that Defendants could have minimized plan losses by resigning because it was unclear "how shifting responsibility for the Plan's administration to another fiduciary would have resulted in any different course of action").

Finally, to the extent alleged against Newport Trust, Plaintiffs' allegations regarding a failure appropriately to monitor the prudence of Lifetouch stock as an ESOP investment (Am. Compl. ¶ 21) also states no plausible claim.[8] A "fiduciary is required to conduct a regular review of its investment with the nature and timing of the review contingent on the circumstances." *Tibble v. Edison Int'l.*, 135 S. Ct. 1823, 1827-28 (2015). Here again, the ongoing sales process makes any suggestion that Newport Trust failed appropriately to monitor the ESOP's investments implausible.

In sum, Plaintiffs' failure to assert a plausible duty-of-prudence claim under *Iqbal / Twombly* disposes of the entirety of their case against Newport Trust.

---

[8]  Plaintiffs' decision to plead claims against "the Trustee" generically, and without specifying how each individual ESOP trustee acted imprudently, makes it difficult to understand whether they are basing their duty-of-prudence claim against Newport Trust on allegations that Newport Trust failed to monitor the ESOP's investments. (*See* Am. Compl. ¶ 10 n.1 (acknowledging group pleading as to ESOP trustees).)

**B.      The Principles Underlying the United States Supreme Court's Ruling in *Fifth Third Bankcorp v. Dudenhoeffer* Support a 12(b)(6) Dismissal.**

The rationale supporting the United States Supreme Court's decision in *Fifth Third* also supports dismissal of Plaintiffs' claims against Newport Trust.

In *Fifth Third*, the Court evaluated claims for breach of the duty of prudence against the fiduciaries of an ESOP for a public company based on inside information. 134 S. Ct. 2459 (2014).  To balance the fiduciaries' right to avoid securities law liability in service to an ESOP against their obligations to act in the ESOP's best interests, the Court adopted an "alternative action" pleading standard.[9]  *Id.* at 2472.  In light of Plaintiffs' failure to satisfy a less-exacting pleading standard (*see supra* pp. 16-18) there is no need for this Court to decide whether the "alternative action" standard applies here, in the context of a closely-held ESOP.[10]  However, here, as in *Fifth Third*, consideration of ERISA's careful balancing "between ensuring fair and prompt enforcement of rights

---

[9]  In *Fifth Third* the Court held:

> To state a claim for breach of the duty of prudence on the basis of inside information a plaintiff must plausibly allege an alternative action that the defendant could have taken that would have been consistent with the securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than help it.

*Id.* at 2472.

[10]  Certain district courts have found the *Fifth Third* standard applicable to ESOPs of closely held companies.  *See, e.g., Hill v. Hill Bros. Constr. Co.,* Cause No. 3:14cv213-SA-SAA, 2016 WL 1252983, at *6 (N.D. Miss. Mar. 28, 2016) ("The Court's reading of *Fifth Third* does not preclude application of the alternative action standard to" fiduciaries of ESOPs of non-public companies).  However, the Seventh Circuit declined to apply *Fifth Third* in a case involving a closely-held ESOP.  *See Allen v. Greatbank Trust Co.,* 835 F.3d 670, 679-80 (7th Cir. 2016) (finding *Fifth Third* was "limited to publicly traded stock and relies on the prices produced by liquid markets").

under a plan and the encouragement and creation of such plans," supports dismissal.  *Id*. at 2470.

As set forth above, the wholesale divestiture of Lifetouch stock from the ESOP or Newport Trust's resignation as trustee shortly after its appointment would unquestionably have had an adverse impact on the ongoing sales process and resulted in lower bids for Lifetouch.  This, in turn, would have exposed Newport Trust to lawsuits from current Lifetouch employees whose retirement savings would have decreased as a result of Newport Trust's actions.  But, as a result of not causing the divestiture or resigning, Newport Trust has been sued by Plaintiffs.  Leaving ERISA fiduciaries like Newport Trust without any viable option to insulate themselves from liability is precisely the result that the Court sought to avoid in *Fifth Third*.  To avoid such a result here, Plaintiffs' claim against Newport Trust should be dismissed.

## CONCLUSION

For the foregoing reasons, Newport Trust respectfully requests that, as to Newport

Trust, the Amended Complaint be dismissed with prejudice in its entirety.

Dated:  June 15, 2018

**GOODWIN PROCTER LLP**

By:   */s/ Gabrielle Gould*

Gabrielle Gould (admitted *pro hac vice*)
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 813-8800
Facsimile: (212) 335-3333
ggould@goodwinlaw.com

**GOODWIN PROCTER LLP**

James O. Fleckner (admitted *pro hac vice*)
100 Northern Avenue
Boston, MA 02210
Telephone: (617) 570-1000
Facsimile: (617) 523-1231
jfleckner@goodwinlaw.com

**FELHABER LARSON**

David L. Hashmall (#138162)
220 South Sixth Street, Suite 2200
Minneapolis, MN 55402-4504
Telephone: (612) 339-6321
Facsimile: (612) 338-0535
dhashmall@felhaber.com

*Attorneys for Defendant Newport Trust Company*