UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Deborah Vigeant, Rhonda Wood, Elizabeth Millane, Douglas Eckelbecker, Amanda Eckelbecker, Rodney Uting, Lawrence Anderson, and all other individuals similarly situated,<br><br>                  Plaintiffs,<br><br>vs.<br><br>Michael Meek, Paul Harmel, P. Robert Larson, Donald Goldfus, John Anderson, Bruce Nicholson, Bernie Alrich, Ted Koenecke, Glenn Elo, Newport Trust Company, and Lifetouch Inc.,<br><br>                  Defendants. | Case No. 0:18-cv-00577-JNE-TNL |

**DEFENDANTS MICHAEL MEEK, PAUL HARMEL, P. ROBERT LARSON, DONALD GOLDFUS, JOHN ANDERSON, BRUCE NICHOLSON, BERNIE ALRICH, TED KOENECKE, GLENN ELO, AND LIFETOUCH INC.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT**

## INTRODUCTION

Plaintiffs have retreated from a central theory of their Amended Complaint (the "Complaint")—that Lifetouch's stock was an "imprudent investment" for the Lifetouch Employee Stock Ownership Plan ("Plan") because Lifetouch's business challenges made its stock "risky." Switching gears, Plaintiffs now advance an affirmative fraud claim based on one paragraph in their Complaint. According to this claim, the value of Lifetouch's stock was "artificially inflated" because unidentified Lifetouch "executives" over-counted Lifetouch's customers at photoshoots by treating families as multiple customers ("Sits"), rather than just one (the "Sits Claim").

This threadbare Sits Claim fails to pass muster under Rule 9(b) or even Rule 8. Not only does it fail to allege that the method of counting customers was improper, unknown to the Trustee, or would inflate Lifetouch's stock price, it does not even allege that any Lifetouch Defendant made any false statements to anyone. Plaintiffs simply disagree with Lifetouch's internal method of counting customers.

Nor do Plaintiffs identify any other basis for their theory that Lifetouch's stock price was "artificially inflated." Their only remaining allegation is that because Lifetouch's stock price fell 36% in 2017, the price must have been too high in 2016. But as many courts have recognized, a mere drop in a stock's price does not plausibly suggest that the prior price was incorrect. Nothing else in the Complaint remotely suggests a flawed fiduciary process sufficient to support an ERISA fiduciary-breach claim.

1

# ARGUMENT

I. **The Complaint Fails To Plausibly Allege A Flawed Fiduciary Process.**

Plaintiffs admit that to state an ERISA fiduciary-breach claim they must plausibly allege that the fiduciary "decision making process was flawed." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009); *see* Opp. 22.[1] That standard is not met with allegations that "are merely consistent with liable acts," if they are also consistent with proper behavior. *Meiners v. Wells Fargo*, 898 F.3d 820, 823 (8th Cir. 2018). And contrary to Plaintiffs' claim (Opp. 4, 17), lack of "insider information" does not excuse them from alleging a plausible claim, a point driven home by the Eighth Circuit in *Meiners*, 898 F.3d at 822. As set forth below, all the Complaint's non-conclusory allegations are consistent with the lawful, prudent administration of the Plan. Plaintiffs' claims should be dismissed.

II. **Plaintiffs Abandoned The Claim That Lifetouch Stock Was "Too Risky."**

Plaintiffs have abandoned a central claim in their Complaint—that Lifetouch stock was "too risky an investment" for the Plan because "the value of the Company, and thus the stock price, was in rapid decline" (the "Excessive Risk Claim"). AC ¶¶ 11, 64. The Complaint cites that "risk" as one of the "two reasons" that Lifetouch stock was "an impudent investment" (*id.* ¶ 11), and the bulk of allegations concern this Excessive Risk Claim (*see, e.g.*, *id.* ¶¶ 5, 11, 18, 23, 62, 64, 75, 80, 83).

Yet Plaintiffs' opposition brief does not even respond to the arguments that the Excessive Risk Claim should be dismissed (Mem. 18-26). Instead, Plaintiffs devote their

---

[1] "Opp." refers to Plaintiffs' opposition brief; "Mem." refers to the Lifetouch Defendants' opening brief.

brief to defending the Sits Claim—that Lifetouch stock was an imprudent investment "by virtue of its being artificially inflated." *E.g.*, Opp. 3, 4, 6, 7, 10, 11, 13. By not responding to the arguments directed at the Excessive Risk Claim, Plaintiffs abandoned that claim. It should be dismissed. *See Demien Constr. Co. v. O'Fallon Fire Prot. Dist.*, 812 F.3d 654, 657 (8th Cir. 2016) (affirming dismissal when plaintiff "did not address the [defendant's] argument that [it] failed to state a claim").[2]

In any event, dismissal of the Excessive Risk Claim is mandated by controlling ESOP law. Plaintiffs do not dispute that the Plan, as an ESOP, was *designed* to invest in Lifetouch stock, was exempt from ERISA's diversification requirement, and its fiduciaries had no duty to override the Plan's design to sell Lifetouch stock when business challenges made the stock "riskier." *See* Mem. 18-20. Given this law, and the many cases dismissing similar claims (Mem. 19), the Excessive Risk Claim fails. Any other result would set ESOP fiduciaries on a "razor's edge," requiring them to predict the sponsor's future business prospects or face a fiduciary-breach claim. *Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728, 733 (7th Cir. 2006).[3]

---

[2] *See Nelson v. Wachovia Mortg. Corp.*, 2012 U.S. Dist. LEXIS 197407, at *3 (D. Minn. Mar. 23, 2012) (dismissing claim as "abandoned" where plaintiff "did not respond to . . . arguments . . . in motion to dismiss"); *Tatone v. SunTrust Mortg., Inc.*, 857 F.Supp.2d 821, 834 (D. Minn. 2012) (same; collecting more cases).

[3] Plaintiffs' discussion of *Fifth Third Bank v. Dudenhoeffer*, 134 S.Ct. 2459 (2014) is off point (Opp. 15). The Lifetouch Defendants cited *Dudenhoeffer*'s "more harm than good" standard to address alternatives that Plaintiffs alleged were available to avoid the "risk" of Lifetouch stock (Mem. 21-26). Plaintiffs abandoned that Excessive Risk Claim and, in any event, identify no action that any Defendant could have taken in its fiduciary capacity to protect against the risk.

### III. The "Artificial Inflation" Claim Fails.

Without the Excessive Risk Claim, Plaintiffs' fiduciary-breach claim hinges on their second theory—that the Director Defendants and Lifetouch "artificially inflated" Lifetouch's stock price. This theory fails to satisfy Rule 9(b), as it must, or even Rule 8.

As they did with the Excessive Risk Claim, Plaintiffs retreat from the Complaint's actual stock "inflation" allegations. The Complaint alleges "inflation" on the theory that the Director Defendants and Lifetouch "withheld information concerning the deterioration of" Lifetouch." AC ¶¶ 73, 78. In their opposition brief, Plaintiffs jettison that theory: "the Board Defendants and Lifetouch are *not* alleged to have withheld information." Opp. 12 (emphasis added). This reversal is not surprising given Plaintiffs' failure to identify any Defendant who "fail[ed] to disclose" anything. *See* Mem. 16-17.

Plaintiffs now argue that Lifetouch and the Director Defendants "manipulated" the number of Sits, which somehow "inflated" Lifetouch's stock price. Opp. 8. That cannot save the Complaint. First, the Complaint alleges only that unnamed "senior executives" manipulated Sits; it alleges no involvement by *any* named Defendant. AC ¶ 61. Plaintiffs "cannot amend their complaint[] through briefing" to now blame named Defendants. *Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1140 (8th Cir. 2014).

Second, as discussed below, even if Plaintiffs could amend their Complaint via their brief, the Sits Claim still fails. Nothing in the one paragraph addressing the Sits Claim (AC ¶ 61) explains why the method of counting Sits was misleading or improper, that those doing the valuation were unaware of the method, or how the number of Sits could affect

4

Lifetouch's stock price. Given those deficiencies, the Sits Claim lacks both the particularity required by Rule 9(b) and the plausibility required by Rule 8.

### A. The Complaint does not sufficiently allege "manipulation" of Sits.

Plaintiffs fail to sufficiently allege that the Director Defendants or Lifetouch fraudulently "inflated" the value of Lifetouch stock in 2015 or 2016.

Contrary to Plaintiffs' argument (Opp. 13), that allegation of fraud must satisfy Rule 9(b). "[C]ourts around the country . . . have applied Rule 9(b) to ERISA claims when the [fiduciary-breach] claims are based on an underlying fraud." *Zarrella v. Pac. Life Ins. Co.*, 809 F.Supp.2d 1357, 1365 & n.4 (S.D. Fla. 2011) (collecting cases). In particular, courts apply Rule 9(b) where, as here, plaintiffs bring those claims against ESOP fiduciaries, claiming they "artificially inflated" company stock.[4] *E.g.*, *Crocker v. KV Pharm. Co.*, 782 F.Supp.2d 760, 784-87 (E.D. Mo. 2010). This comports with Eighth Circuit law that all "[c]laims 'grounded in fraud' must meet [Rule 9(b)'s] heightened pleading requirement." *Streambend Props. II, LLC v. Ivy Tower Mpls., LLC*, 781 F.3d 1003, 1010 (8th Cir. 2015).

For example, in the *Crocker* case cited by Plaintiffs (Opp. 24), the plaintiffs brought an ERISA claim against their fiduciaries, claiming "the price of the [company] stock was artificially inflated as a direct result of Defendants' scheme to misrepresent the . . . [the

---

[4] *See also, e.g.*, *In re Coca-Cola Enters., ERISA Litig.*, 2007 U.S. Dist. LEXIS 44991, at *19 (N.D. Ga. June 19, 2007) (same); *In re GM ERISA Litig.*, 2006 U.S. Dist. LEXIS 16782, at *52 (E.D. Mich. Apr. 6, 2006) (same); *Rogers v. Baxter Int'l Inc.*, 417 F.Supp.2d 974, 984-85 (N.D. Ill. 2006); *Pietrangelo v. NUI Corp.*, 2005 U.S. Dist. LEXIS 40832, at *37-38 (D.N.J. July 18, 2005) (same); *In re ADC Telcoms., Inc.*, 2004 U.S. Dist. LEXIS 14383, at *8-9 (D. Minn. July 26, 2004) (same); *cf. Concha v. London*, 62 F.3d 1493, 1502 (9th Cir. 1995) ("Rule 9(b) is applicable where the plaintiffs allege fraud" in an ERISA claim); *Thornton v. Evans*, 692 F.2d 1064, 1082 (7th Cir. 1982) (same).

5

company's] financial and accounting activities." 782 F.Supp.2d at 784. The court held that those allegations "sound in fraud" so "are subjected to the heightened pleading requirements of Rule 9(b)." *Id.* at 784-87 (quotation omitted). It made no difference that the allegations were part of an ERISA claim or that the plaintiffs avoided "the word 'fraud'"; the allegations sounded in fraud so Rule 9(b) applied. *Id.*

So too, Rule 9(b) applies to Plaintiffs' revised claim that Lifetouch's stock price was "deliberately manipulated" and "artificially inflated" by the Director Defendants and Lifetouch when they provided "false information" to the Trustee. Opp. 3, 11-13. Such an allegation of deliberate stock manipulation is a quintessential claim of fraud that must satisfy Rule 9, regardless of whether it is couched within an ERISA claim or whether Plaintiffs avoided the word "fraud." *See, e.g.*, *Crocker*, 782 F.Supp.2d at 784-87.

The Complaint's one paragraph concerning the Sits Claim does not meet that standard. It does not allege that the method of counting Sits was misleading, violated accounting rules, or was otherwise improper. AC ¶ 61. Nor does it allege that the method was unknown to those doing the valuation, and thus not accounted for in the Plan's annual valuation. *Id.* Indeed, Plaintiffs do not even explain how counting Sits would have *any* impact on Lifetouch's profit, revenue, expenses, or anything affecting Lifetouch's stock price. Plaintiffs offer only the conclusion that the "greater the number of sits, the higher the valuation of Lifetouch stock." *Id.* And Plaintiffs fail to allege the required "who, what,

6

when, where and how surrounding the alleged fraud."[5]  The Complaint does not sufficiently identify "who" was responsible for the conduct, or "when" or "how" the misstatements were made to the Trustees.  *Id.*  In fact, the Complaint alleges only what "*seems* to have been" manipulation by unidentified "senior executives."  *Id.* (emphasis added).  That speculation comes nowhere near the specificity required by Rule 9(b).[6]

Plaintiffs' opposition brief doubles down on this deficiency by vaguely accusing Lifetouch's CEO, Paul Harmel, of forcing the Director Defendants to "manipulate" financial data in the valuation process.  Opp. 11 n.5.  But the Complaint alleges zero facts to support that accusation, and the paragraphs that Plaintiffs cite (AC ¶¶ 14, 61, 78, 115) merely reiterate unrelated allegations.

Finally, the cases Plaintiffs cite for the proposition that they need not plead stock "manipulation" with the particularity required by Rule 9(b) do not save their claim.  Opp. 13.  Most are out-of-circuit cases that applied Rule 8 where no fraud was alleged.[7]  And the one in-circuit case reaffirmed that "[p]laintiffs are required to plead with particularity when the alleged breach of the fiduciary is the fraudulent act."  *In re Xcel Energy, Inc.*, 312

---

[5] *OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Research*, 851 F.3d 800, 806 (8th Cir. 2017) (affirming dismissal under this standard).

[6] Similarly, Plaintiffs do not explain how employees traveling to faraway photoshoots indicates fraud (AC ¶ 61), as opposed to an unsuccessful venture.  *See Meiners*, 898 F.3d at 822 (allegations consistent with legal acts do not state a claim).  Nor do they allege how this costly practice inflated Lifetouch's stock price.  AC ¶ 61.

[7] *E.g., In re Elec. Data Sys. Corp ERISA Litig.*, 305 F.Supp.2d 658, 672 (E.D. Tex. 2004) ("Rule 9(b) is applicable where the plaintiffs allege fraud"); *Precision Vascular Sys., Inc. v. Sarcos, L.C.*, 199 F.Supp.2d 1181, 1191 (D. Utah 2002) (same); *Sheldon v. Vermonty*, 31 F.Supp.2d 1287, 1295 (D. Kan. 1998) ("this claim is not based on fraud").

F.Supp.2d 1165, 1179 (D. Minn. 2004).[8] Under Eighth Circuit law, allegations of fraud that do not satisfy Rule 9(b) must "be stripped from the claim," leaving the court to determine whether the remaining allegations state a claim. *In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 315 (8th Cir. 1997); *see* 2 Moore's Federal Practice § 9.03 (same).

In any event, the Sits Claim is implausible, so it also fails under Rule 8. The Complaint contains just one paragraph regarding that claim (AC ¶ 61), and, as mentioned, it does not allege that the method of counting Sits was improper, unknown to the valuators, or affected Lifetouch's stock price. That barebones allegation, even under Rule 8, does not plausibly suggest "artificial inflation" of Lifetouch stock.

### B. The remaining allegations do not suggest that Lifetouch's stock price was "artificially inflated" in 2015 or 2016.

Plaintiffs fail to save their "artificial inflation" claim by alleging that the 2015-2016 valuations did not reflect Lifetouch's business difficulties, as evidenced by the 36% drop in the stock's value in 2017.

Plaintiffs acknowledge that the 2017 valuation process was "accurate," and they do not allege that the valuation process in 2015-2016 was any different (apart from the Sits Claim). Opp. 11 n.5. Instead, Plaintiffs argue that the timing of the 2017 drop suggests that the prior valuations were "manipulated." This allegation fails to state a claim.

The mere fact that Lifetouch's share price dropped 36% in 2017 does not suggest a flaw in the prior valuations. A plaintiff "cannot rely, after the fact, on the magnitude of the

---

[8] *Xcel* applied Rule 8 because, unlike here, the alleged fiduciary breach "arose as a result of" conduct other than "fraud." 312 F.Supp.2d at 1179.

decrease in" ESOP stock value to state a claim that company stock was "inflated." *In re Citigroup ERISA Litig.*, 662 F.3d 128, 140 (2d Cir 2011).[9] And the 2017 stock drop is "exactly what one would" expect from Plaintiffs' own allegations. *Meiners*, 2017 U.S. Dist. LEXIS 80606, at *6 (dismissing prudence claim for this reason). The Complaint alleges that Lifetouch's financial woes worsened in 2017 to the point of "impending collapse." AC ¶ 20. According to the Complaint, Lifetouch faced a "dire situation during 2016 and into 2017" with "worsening cash flow problems," making "further declines" in stock value "*certain*." *Id.* ¶¶ 20, 207 (emphasis added). Thus, the 2017 drop is consistent with a sound valuation process. *See Meiners*, 898 F.3d at 822.

Nor do allegations about Lifetouch's "financial distress" in 2016 suggest that a 5% share-price drop in that year was too small to reflect the company's value. Opp. 9, 11. While the Complaint alleges that 2016 included the closure of one factory and an unidentified number of studios, as well as the planned departure of the CEO, it does not explain why those changes were so severe, in proportion to Lifetouch's overall business, that they merited more than a 5% drop. *See* AC ¶ 59. In sum, the Complaint alleges nothing to suggest that a 5% drop was inconsistent with a sound valuation process. *See Meiners*, 898 F.3d at 822.

---

[9] *See also DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 424 (4th Cir. 2007) ("an investment's diminution in value is . . . no[t] sufficient, to demonstrate a violation of a fiduciary's ERISA duties"); *Hill v. Hill Bros. Constr. Co.*, 2016 U.S. Dist. LEXIS 40225, at *24 (N.D. Miss. Mar. 28, 2016) (same as to privately-held stock).

### C. The Complaint fails to allege any plausible claim against the Trustee Defendants or Lifetouch.

Plaintiffs' opposition brief confirms that the claims against the Trustee Defendants Konecke and Elo and Lifetouch should be dismissed.

***Trustees Konecke and Elo.*** Once the deficient "artificial inflation" allegations are stripped away (*NationsMart*, 130 F.3d at 315), what remains does not suggest that the Trustees' valuation process was flawed. And contrary to Plaintiffs' suggestion (Opp. 9-10), *Xcel* does not suggest that Rule 8 applies because someone else committed the alleged fraud. *Xcel* requires all allegations of fraud to comply with Rule 9; it applied Rule 8 only because "fraud" was not at issue. 312 F.Supp.2d at 1179.

Even if Plaintiffs had stated a fraud claim (or Rule 8 applied), the Complaint still states no claim against the Trustees. As Plaintiffs admit, there is no allegation that either Trustee manipulated Lifetouch stock. Opp. 9-10. While Plaintiffs claim those Defendants "should have investigated" whether the stock value was inflated, they cite nothing to suggest that any Defendant knew or should have known that the value was problematic. *See id*. The mere fact that Lifetouch experienced difficulties does not plausibly suggest that Defendants Konecke and Elo knew or should have known that fraud occurred.

***Lifetouch.*** Plaintiffs also fail to state a claim against Lifetouch itself. Even if Plaintiffs had alleged that other Defendants contributed to overvaluation of Lifetouch stock, they fail to allege how Lifetouch could be responsible under ERISA. As Plaintiffs' admit, Lifetouch's fiduciary responsibilities were limited to "[c]ommunicating with [Plan] Participants" and other non-valuation aspects of the Plan. AC ¶ 52; *see also* Dkt. 60 (Plan)

§ 19(a)(2)(A) (defining duties of Lifetouch as Plan Administrator). Nothing in the Complaint suggest that Lifetouch knowingly communicated an overstated stock value, or that it had a duty to investigate that the stock was overvalued.

## V. The "Undervaluation" Claim Fails.

Nor do Plaintiffs save their final breach-of-prudence theory—that Lifetouch stock was "undervalued" in the 2018 Shutterfly acquisition (the "Undervaluation Claim").

First, Plaintiffs now make clear that the Undervaluation Claim cannot proceed against Defendants Koenecke and Elo, who were not Trustees at the time. *See* Opp. 18-22 (asserting Undervaluation Claim against only Newport). Nor can that claim proceed against the Director Defendants or Lifetouch, who had no alleged fiduciary responsibility for the 2018 valuation, and no alleged manipulation occurred during that period. *See id*.

Second, nothing in the Complaint alleges a plausible Undervaluation Claim. Plaintiffs acknowledge that their "overvaluation" theory hinges on the allegation that Lifetouch stock price fell 17% between June 2017 and January 2018 (when Lifetouch was sold to Shutterfly). Opp. 22. According to Plaintiffs, that drop "speak[s] for" itself and means the 2018 valuation "cannot have been" correct. *Id.* But as noted, a stock drop, without more, does not suggest a flawed fiduciary process. *See* Section III.B, above.

Moreover, even if Plaintiffs were correct that Lifetouch's stock value fell 17% between 2017 and early 2018, that drop is consistent with the Complaint's allegations that Lifetouch experienced setback during this period that were "certain" to result in stock declines. AC ¶ 107. The 17% drop in stock value is fully consistent with the "downward

spiral" alleged in the Complaint (*id.* ¶ 6), so the Complaint does not plausibly suggest the sale price was undervalued.  See *Meiners*, 898 F.3d at 822.

Alternatively, as Defendants explained, Plaintiffs fail to plausibly allege a 17% drop in Lifetouch's stock price.  Mem. 14 & n.10.  Plaintiffs do not dispute that their allegation that Shutterfly paid $825 million for Lifetouch is based on the purchase agreement, so it can be reviewed on a motion to dismiss.  See Opp. 19-22.  Nor do Plaintiffs dispute that the purchase agreement states that Shutterfly paid $825 million *plus* the "cash and cash equivalents" held by Lifetouch—i.e., cash and short term bonds held by Lifetouch.  Mem. 6, 14 & n.10.  As such, the allegation that the purchase price was only $825 million— without regard to "cash equivalents"—is implausible.  See *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (allegations "contradict[ed]" by applicable contracts are not credited on a motion to dismiss).[10]  Nor can Plaintiffs remedy this flaw by arguing that the amount of "cash and cash equivalents" is "unknown" and "possibly nonexistent."  Opp. 22.  Such speculation is not in the Complaint and is in fact inconsistent with it.[11]

Finally, Plaintiffs cannot save the Undervaluation Claim by objecting to the Court's consideration of SEC filings reflecting the final Shutterfly-Lifetouch purchase price.  Opp. 19-22.  While those public filings undermine Plaintiffs' allegations, the Lifetouch Defendants' arguments stand independent of those documents.

---

[10] The Eighth Circuit has repeatedly affirmed that courts should consider the terms of documents embraced by the Complaint.  See *Zean*, 858 F.3d at 526; *Meiners*, 898 F.3d at 823; *Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 839-40 & n.2 (8th Cir. 2014).

[11] The Complaint alleges that Lifetouch had enough cash to "b[uy] out" the "thousands" of Plan participants' "holdings of Lifetouch stock."  AC ¶¶ 16, 19, 86.

## IV. The Remaining Claims Also Fail.

Plaintiffs' opposition brief—like their Complaint—does nothing to support their "loyalty" or "monitoring" claims. Both should be dismissed.

***Loyalty Claim.*** Plaintiffs' loyalty claim "simply recast[s] purported breaches of the duty of prudence as disloyal acts." *Sacerdote v. N.Y. Univ.*, 2017 U.S. Dist. LEXIS 137115, at *14 (S.D.N.Y. Aug. 25, 2017) (dismissing loyalty claim); *see also White v. Chevron Corp.*, 2017 U.S. Dist. LEXIS 83474, at *21 (N.D. Cal. May 31, 2017) (same). Both claims rely on the same implausible allegation that the Director Defendants and Lifetouch "manipulated" Lifetouch's stock price.[12] Because that allegation fails under Rule 9(a) and Rule 8 (Section III.A, above), the loyalty claim also fails. *See In re Target Corp. Sec. Litig.*, 275 F.Supp.3d 1063, 1090 (D. Minn. 2017) (dismissing "loyalty" claims that were "prudence claims in disguise").

Nor does any inference of disloyal intent arise from the allegation that "multiple [unidentified] senior executives" retired "in 2015 and 2016." Opp. 23. First, Plaintiffs still fail to identify more than a single "retiring executive." *See id.* Second, as Defendants argued (Mem. 28), the fact that a number of executives retired over a two-year period is consistent with "legal" behavior, and thus does not state a plausible claim. *See Braden*, 588 F.3d at 597. Plaintiffs do not even respond to that argument. *See* Opp. 23. Third, Plaintiffs' allegation is further undercut by the fact that, had any executives actually retired

---

[12] *Compare* Opp. 8 (prudence: defendants "manipulated the data used to determine the value of Lifetouch's stock"), *with* Opp. 23 (loyalty: defendants "manipulated the financial data . . . leading to an artificially inflated valuation of Lifetouch stock").

13

at this time, the Plan dictated that they would be paid out over three years—i.e., they would have received most benefits *after* the alleged "inflation."  Mem 28 n.16.

*"Monitoring" Claim.*  Plaintiffs do not dispute that the monitoring claim is derivative.  Opp. 23-24.  Because Plaintiffs' underlying claims fail, this claim also fails.  Moreover, Plaintiffs still have not alleged a single non-conclusory fact about the monitoring process; this claim should be dismissed.  *See White*, 2016 U.S. Dist. LEXIS 115875, at *59-60.

## V. Dismissal Should Be With Prejudice.

Recognizing that the Amended Complaint fails to state any plausible claim, Plaintiffs claim they should get another bite at the pleading apple in form of a dismissal without prejudice.  Opp. 24-26.  They are wrong.  "Rule 12(b)(6) dismissals are commonly with prejudice," and here, dismissal with prejudice is warranted.  *Phx. Entm't Partners, LLC v. Star Music, Inc.*, 2017 U.S. Dist. LEXIS 195497, at *14 (D. Minn. Nov. 28, 2017) (collecting cases); 2 Moore's Federal Practice § 12.34(5) ("dismissal for failure to state a claim is . . . typically entered as a dismissal with prejudice").

"[T]his is not Plaintiffs' only bite at the pleading apple."  *In re Medtronic Inc.*, 592 F.Supp.2d 1147, 1165 (D. Minn. 2009) (dismissing with prejudice).  Rather, Plaintiffs have already gotten *two* bites at the apple: the original Complaint and the Amended Complaint.  Plaintiffs should not be given another.  This Court often dismisses claims with prejudice

where, as here, the plaintiff had more than one bite at the pleading apple.[13]  Though Plaintiffs argue that certain documents reflecting Lifetouch's financial situation became available only after they filed the Amended Complaint (Opp. 24-25), that does not justify dismissal without prejudice.  Plaintiffs now have those documents, and their opposition brief still does not explain what "new" information supports the claim that Lifetouch's stock price was "too high" or "too low."  *See Smith v. Conway*, 2016 U.S. Dist. LEXIS 122632, at *5 (D. Minn. Sep. 9, 2016) (dismissing with prejudice given indication "that no amount of re-pleading will cure [the] deficiencies").

## CONCLUSION

The Complaint should be dismissed with prejudice.

---

[13] *See, e.g.*, *Mendota Elec., Inc. v. Fair Contracting Found.*, 144 F.Supp.3d 1053, 1058 (D. Minn. 2015) ("The court will not allow [plaintiff] a third bite at the apple."); *O'Neil v. Simplicity, Inc.*, 553 F.Supp.2d 1110, 1119 (D. Minn. 2008) (similar).

| | |
|---|---|
| Dated: September 7, 2018 | DORSEY & WHITNEY LLP |
| | By  */s/ Stephen P. Lucke*<br>    Stephen P. Lucke (#0154210)<br>    lucke.steve@dorsey.com<br>    Andrew Holly (#308171)<br>    holly.andrew@dorsey.com<br>    Nicholas J. Bullard (#0397400)<br>    bullard.nick@dorsey.com<br>Suite 1500, 50 South Sixth Street<br>Minneapolis, MN 55402-1498<br>Telephone:  (612) 340-2600<br>Facsimile:  (612) 340-2868<br><br>*Attorneys for Defendants Michael Meek, Paul Harmel, P. Robert Larson, Donald Goldfus, John Anderson, Bruce Nicholson, Bernie Alrich, Ted Koenecke, Glenn Elo, and Lifetouch Inc.* |
| DRINKER BIDDLE & REATH LLP<br>    Theodore M. Becker (*pro hac vice*)<br>    theodore.becker@dbr.com<br>191 N. Wacker Dr., Suite 3700<br>Chicago, IL 60606-1698<br>Telephone:  (312) 569-1698<br>Facsimile:  (312) 569-3000<br><br>*Attorney for Defendants Ted Koenecke and Glenn Elo* | WINSTON & STRAWN LLP<br>    Cardelle B. Spangler (*pro hac vice*)<br>    cspangler@winston.com<br>    Heather L. Kriz (*pro hac vice*)<br>    hkriz@winston.com<br>35 West Wacker Drive<br>Chicago, IL 60601-9703<br>Telephone: (312) 558-5600<br>Facsimile: (312) 588-5700<br><br>*Attorneys for Defendant Lifetouch Inc.* |