UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Deborah Vigeant, Rhonda Wood,
Elizabeth Millane, Douglas
Eckelbecker, Amanda Eckelbecker,
Rodney Uting, and Lawrence Anderson,
and all other individuals similarly situated,

    Plaintiffs,

v.

Michael Meek, Paul Harmel, P. Robert
Larson, Donald Goldfus, John Anderson,
Bruce Nicholson, Bernie Alrich, Ted
Koenecke, Glenn Elo, Newport Trust
Company, and Lifetouch Inc.,

    Defendants.

Case No. 18-cv-577 (JNE/TNL)
ORDER

Plaintiffs brought a class action to recover the hundreds of millions of dollars lost when Lifetouch's stock value declined. Under Section 502 of the Employee Retirement Income Security Act ("ERISA"), Plaintiffs claim that this loss resulted from breaches of fiduciary duties by Lifetouch, Lifetouch's Board of Directors, and Lifetouch Trustees directly responsible for managing the Employee Stock Ownership Plan ("ESOP"). All Defendants moved to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Subsequently, Plaintiffs voluntarily dismissed the action against Defendant Newport Trust, a Lifetouch Trustee, pursuant to Rule 41(a)(1)(A)(i). Therefore, only the claims against Lifetouch, the Board of Directors ("Directors"), and Trustees Ted Koenecke and Glenn Elo remain. As set forth below, the Court grants Defendants' motion to dismiss.

## BACKGROUND

Lifetouch is a professional photography company focused primarily on school pictures. Until its recent sale to Shutterfly, Lifetouch was 100% owned by its employees through an ESOP sponsored by Lifetouch ("the Plan"). Lifetouch made all contributions to the Plan and the Plan invested primarily in shares of Lifetouch stock. According to the Summary Plan Description, Defendant Lifetouch—the Plan Administrator—was responsible for managing the Plan and communicating with Plan participants. Under the terms of the Trust Agreement, Lifetouch's Directors appointed a Trustee, who had exclusive authority to manage the Plan assets in the trust. Defendants Ted Koenecke and Glenn Elo, Lifetouch senior executives, served as Trustees through May 2017.

Lifetouch made cash distributions to ESOP participants upon their retirement. In the event of a distribution, Lifetouch stock was repurchased at the fair market value determined by the Trustees on the June 30th immediately preceding the repurchase date. Because Lifetouch was a private company, its share price could not be determined on publicly traded markets. For that reason, the Plan required the Trustees to value Lifetouch stock annually. The Trustees appointed and relied on the opinion of an independent appraiser to determine the fair market value.

Starting in 2015, Lifetouch struggled financially as new technologies transformed the professional photography industry and consumer tastes. In 2015 and 2016, Lifetouch suffered repeated financial setbacks. Lifetouch closed J.C. Penney and Target brick-and-mortar portrait studio locations. In November 2015, Lifetouch closed an entire production facility in North Carolina and laid off 206 employees. Additionally, several

Lifetouch senior executives retired, culminating in the retirement of then-CEO Paul Harmel in July 2016. In August of 2016, the *StarTribune*, a major Minnesota newspaper, published an article about Lifetouch's struggles to stay relevant, adapt to modern technology, and satisfy consumer needs.

During this time, Lifetouch's stock value decreased. On June 30, 2015, the Trustees valued Lifetouch stock at $93 per share, a 10% decrease from the 2014 valuation. On June 30, 2016 the Trustees valued Lifetouch stock at $88 per share, a 5% decrease from the previous year's valuation. On June 30, 2017, the Trustees valued Lifetouch stock at $56 per share, a 36% decrease from the previous year.

Lifetouch's financial troubles continued. On January 30, 2018, CEO Michael Meek explained in a *StarTribune* article that Lifetouch had put itself up for sale because growth had slowed, and Lifetouch was not generating enough cash flow to invest in new technologies and other areas of business. That same month, Shutterfly announced it was acquiring Lifetouch for $825 million plus unspecified cash and investments. After receiving a fairness opinion from a third-party financial advisor, Trustee Newport Trust reviewed and approved the sale price.[1] Lifetouch's sale terminated the Plan and commenced the distribution of proceeds to participants.

---

[1] According to the Amended Complaint, Evercore Trust Company was the Trustee starting in May 2017, and its assets were acquired by Newport Trust Company as of October 18, 2017. Am. Compl. ¶ 43. Plaintiffs alleged that Newport Trust breached its fiduciary duties to Plan participants by approving the $825 million acquisition of Lifetouch by Shutterfly. *Id.* ¶ 70. Plaintiffs subsequently dismissed Newport Trust from the suit. ECF No. 79. Accordingly, the Court will not address this claim because Plaintiffs did not allege that any of the remaining Defendants breached their fiduciary duties by approving this sale.

# **LEGAL STANDARD**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But if the pled facts are merely consistent with liable acts, the complaint "stops short of the line between possibility and plausibility." *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

The principal duties owed by Plan fiduciaries are prudence and loyalty. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009). The duty of prudence requires that the fiduciary act "with the care, skill, prudence, and diligence." 29 U.S.C. § 1104(a)(1)(B). The duty of loyalty requires that the fiduciary discharge his duties "solely in the interests of the participants and beneficiaries." *Id.* § 1104(a)(1). While plaintiffs "must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition," the court "must also take account of [plaintiffs'] limited access to crucial information" when pleading ERISA claims. *Braden*, 588 F.3d at 598.

In *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2470 (2014), the Supreme Court outlined a court's task in separating the "plausible sheep from the meritless goats" in a breach of fiduciary duty action under ERISA. That task requires

"careful, context-sensitive scrutiny" of a plaintiff's allegations. *Id.* Moreover, a plaintiff fails to state a claim by alleging "from the vantage point of hindsight" that fiduciaries could have better managed an ESOP's investments. *In re Target Corp. Sec. Litig.*, 275 F. Supp. 3d 1063, 1087 (D. Minn. 2017). Finally, given the difficulty in valuing ESOP privately-held stock, courts review such valuations deferentially. *See Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728, 733 (7th Cir. 2006) ("We must not seat ESOP trustees on a razor's edge."); *see also Kool v. Coffey*, 300 F.3d 340, 362-63 (3d Cir. 2002) (acknowledging "the extremely difficult task of valuing the stock of a company which is privately owned").

## DISCUSSION

### I. Duty of Prudence

Plaintiffs allege two breach of prudence claims. First, Plaintiffs claim that that the Trustees and other "senior executives" manipulated data provided to the independent appraiser to inflate Lifetouch's stock value in 2015 and 2016.[2] Second, Plaintiffs assert that Defendants should have investigated the evident discrepancy between the 2015 and 2016 valuations and Lifetouch's financial reality and removed imprudent investments.

---

[2] In their Amended Complaint, Plaintiffs allege that the Trustees and "senior executives" manipulated the data. Am. Compl. ¶¶ 61-62. However, in their Opposition to Defendants' Motions to Dismiss, Plaintiffs state that "the Board Defendants and Lifetouch manipulated the data used to determine the value of Lifetouch's stock." Pls.'s Opp'n to Defs.' Mot. to Dismiss 8, ECF No. 72. "In reviewing a Rule 12(b)(6) motion, a court accepts as true all factual allegations in the complaint." *Morrison v. MoneyGram Int'l, Inc.*, 607 F. Supp. 2d 1033, 1045 (D. Minn. 2009). Given the discrepancy between the Plaintiffs' allegations in the Amended Complaint and Plaintiffs' motion, the Court relies on the allegations as pleaded in the Amended Complaint.

## A. Defendants Artificially Inflated Lifetouch's Stock Value in 2015 and 2016

Defendants argue that Plaintiffs fail to plead that Lifetouch's stock was overvalued in 2015 and 2016. First, Defendants assert that Plaintiffs do not plead with particularly, under Rule 9(b), that the Trustees fraudulently inflated Lifetouch's stock value. Second, Defendants argue that Lifetouch's stock drop in 2017 does not plausibly suggest that Defendants overvalued Lifetouch stock in 2015 and 2016. For the following reasons, the Court agrees.

### 1. Pleading Standard

The parties disagree as to what pleading standard applies. Defendants argue that Plaintiffs must plead the fraud-based allegation of data manipulation with particularity, as required by Rule 9(b). Although Rule 9(b) is not generally applied to ERISA claims, several district courts in this circuit have applied the heightened pleading requirement where fraudulent conduct is the basis of the alleged breach. *Crocker v. KV Pharm. Co.*, 782 F. Supp. 2d 760, 784 (E.D. Mo. 2010) (collecting cases); *In re ADC Telecommunications, Inc., ERISA Litig.*, No. 03-2989, 2004 WL 1683144, at *3 (D. Minn. July 26, 2004) ("Plaintiffs' non-specific claims that certain Defendants engaged in 'a scheme to deceive' by improperly booking revenues to inflate stock value do not supply adequate detail to meet the particularity requirements of who, what, when, where, and how."). These decisions comport with Eighth Circuit precedent that Rule 9(b) applies to claims "grounded in fraud." *Streambend Props. II, LLC v. Ivy Tower Mpls., LLC*, 781 F.3d 1003, 1010 (8th Cir. 2015).

Plaintiffs nevertheless contend that ERISA claims need only be pleaded consistent with Rule 8. However, the cases cited by Plaintiffs are distinguishable. These cases involve claims that fiduciaries failed to disclose information about the truth of the stock's value. *See Jander v. Int'l Bus. Machines Corp.*, 205 F. Supp. 3d 538, 543 (S.D.N.Y. 2016) (plaintiffs alleging that defendants were aware of misleading statements but "did nothing to act upon that knowledge to protect the retirement savings of the Plan participants"); *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F. Supp. 2d 658, 672 (E.D. Tex. 2004) ("Plaintiffs have alleged breach of a fiduciary duty to inform.").

The Court will apply Rule 9(b) to Plaintiffs' claims of fraudulent data manipulation. This alleged conduct—providing inaccurate and misleading information to the independent appraiser—sounds in fraud. Moreover, Plaintiffs do not allege that the Trustees simply had knowledge of and failed to disclose fraud; they allege that they breached their duty by committing fraud. Courts have accepted this "knowledge of fraud/commission of fraud distinction" when determining whether to apply Rule 9(b) to a plaintiff's claims. *In re ADC Telecommunications*, 2004 WL 1683144, at *3. Consequently, the heightened Rule 9(b) pleading standard applies to Plaintiffs' claim that the Trustees manipulated the stock value. The remaining allegation—Defendants' failures to investigate and remove imprudent investments—is not based on fraudulent conduct, and thus, Rule 9(b) does not apply to the second claim.

**2.      Fraudulent Misrepresentation**

Rule 9(b) provides that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. Rule 9(b). Pleading with

7

particularity requires describing matters such as "the time, place and contents of false representations" and who made the misrepresentation. *Parnes v. Gateway 2000*, 122 F.3d 539, 549 (8th Cir. 1997). Required facts include the "who, what, when, where and how surrounding the alleged fraud . . . and what was obtained as a result." *OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Research*, 851 F.3d 800, 804 (8th Cir. 2017) (quoting *Quintero Cmty. Ass'n Inc. v. F.D.I.C.*, 792 F.3d 1002, 1010 (8th Cir. 2015).

Plaintiffs fail to meet this standard. Plaintiffs allege that "senior executives" fraudulently mispresented the number of photo sittings to increase Lifetouch's value. Am. Compl. ¶ 61. For example, "if Lifetouch booked a family of five for a photoshoot, instead of marking that shoot as one 'sit,' Lifetouch would count it as six—one for the family, and then one for each individual member of the family." *Id.* Lifetouch also counted expensive photoshoots "in faraway places" as photo sittings even though "the profit from the shoot could not justify the expense of the travel." *Id.* But the Complaint does not identify which executives were involved. The Complaint also does not allege that this was a new practice implemented to inflate the stock value in 2015, that the Trustees or independent appraiser relied on these numbers to determine the stock price, or that such counting practices could have had a discernable impact on stock price. Moreover, the Complaint does not explain why this method of counting photo sittings was misleading, violated accounting rules, or was otherwise improper. Thus, Plaintiffs fail to plead fraudulent stock inflation with particularity.

**3. Artificial Inflation**

When inadequate allegations of fraud are made, courts ignore the allegations that do not comply with Rule 9(b) and examine the remaining allegations to determine whether they state a claim. *See In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 315 (8th Cir. 1997) ("The only consequence of a holding that Rule 9(b) is violated with respect to a § 11 claim would be that any allegations of fraud would be stripped from the claim."). To state a breach of prudence claim, plaintiffs must plausibly allege that the fiduciary's decision-making process was flawed. *Braden*, 588 F.3d at 595-97. That showing can be made with allegations directly challenging the process or indirectly suggesting a flawed process and unlawful conduct. *Id.* Plaintiffs do not directly contest the soundness of this process, since the Trustees relied on the opinion of an independent appraiser in valuing the stock. Rather, Plaintiffs ask the Court to infer a flawed process.

Removing the allegations of fraudulent manipulation, Plaintiffs' artificial inflation claim is based on the following. Plaintiffs allege that Lifetouch experienced serious financial problems in 2015 and 2016. Further, Plaintiffs assert that no negative events occurred internally at Lifetouch in 2017 that would have materially impacted Lifetouch's value. Yet, Lifetouch's stock value did not drop dramatically until 2017. Therefore, say Plaintiffs, Defendants must have overvalued the 2015 and 2016 stock price and withheld Lifetouch's economic struggles to maintain these artificially inflated values. Am. Compl. ¶¶ 16, 56, 60, 78, 115.

Plaintiffs contend that they state a plausible claim by inferring overvaluation from a stock drop, especially given that they are not sophisticated parties and have not had the

9

benefit of discovery. However, while courts should consider the Plaintiffs' "limited access to crucial information," it still must be reasonable for the court "to infer from what is alleged that the process was flawed." *Id.* at 596, 598. The court in *Braden* clarified that "[a]n inference pressed by the plaintiff is not plausible if the facts he points to are precisely the result one would expect from lawful conduct in which the defendant is known to have engaged." *Id.* at 597.

Consequently, the Court finds implausible the proffered inference that Lifetouch's stock price was artificially inflated in 2015 and 2016. Plaintiffs argue that Lifetouch's stock value was not negatively impacted in 2017 while at the same time alleging that Lifetouch stock was a risky investment because Lifetouch failed to adapt to new technology and consumer needs. By late 2017, Lifetouch had put itself up for sale. Given the financial hardship alleged by Plaintiffs, a drop in Lifetouch's stock value in 2017 is a "result one would expect from lawful conduct." *Id.* For these reasons, Plaintiffs fail to state a claim that Defendants overvalued Lifetouch stock in 2015 and 2016.

**B.  Defendants Failed to Properly Investigate and Remove Imprudent Investments**

Defendants challenge this claim because a Plan fiduciary is "under no duty to diversify the ESOP's holdings" and sell company stock when business difficulties arise. *Dudenhoffer*, 134 S. Ct. at 2467, 2472. Defendants assert that it is only imprudent for ESOP fiduciaries to continue to invest in employer stock if an investment is excessively risky. *Morrison v. MoneyGram Int'l, Inc.*, 607 F. Supp. 2d 1033, 1053 (D. Minn. 2009).

Defendants contend that excessive risk is a high threshold. Indeed, other circuits have held that "[m]ere stock fluctuations . . . even those that trend downhill significantly, are insufficient to establish the requisite imprudence." *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1096, 1099 (9th Cir. 2004) (no duty to diversify during an approximately 75% drop in stock value); *see also Kuper v. Iovenko*, 66 F.3d 1447, 1451, 1459 (6th Cir. 1995) (same during 80% drop).

Plaintiffs respond that fiduciaries have a "continuing duty of some kind to monitor investments and remove imprudent ones." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1829 (2015). Fiduciaries breach this duty when they fail to investigate whether an investment is imprudent after changed financial circumstances increase the risk of holding stock. *See Armstrong*, 446 F.3d at 734 ("A trustee who simply ignores changed circumstances that have increased the risk of loss to the trust's beneficiaries is imprudent."). Plaintiffs contend that Defendants failed to regularly monitor the prudence of the Plan's investment in the face of contemporaneous warning signs. Therefore, Plaintiffs conclude that that they have adequately alleged that Defendants failed to monitor and remove imprudent investments under *Tibble*. *See Brannen v. First Citizens Bankshares Inc.*, No. 6:15-CV-30, 2016 WL 4499458, at *6 (S.D. Ga. Aug. 26, 2016) (holding that plaintiffs stated a claim where defendants "never conducted an investigation into whether the Plan should continue investing in Company Stock" after the stock value dropped 50% in six months).

The Court holds that Plaintiffs do not plausibly plead an imprudent investment claim under *Tibble*. First, according to Plaintiffs' own allegations, Defendants did regularly monitor the Plan's investment. The Complaint states that the Trustee annually

determined the fair market value of Lifetouch stock with the opinion of an independent appraiser. This annual valuation of Lifetouch is inconsistent with Plaintiffs' assertion that Defendants conducted absolutely no monitoring of the Plan's investment in the face of changed financial circumstances.

Moreover, Lifetouch's stock was not so risky as to make the company stock an imprudent investment. Employer stock is excessively risky when the company is on the verge of collapse. The cases cited by Plaintiffs support this conclusion. In *MoneyGram*, the stock had lost 92% of its value and the SEC was investigating the company's accounting practices. 607 F. Supp. 2d at 1053. In *In re ADC Telcoms., Inc.*, the stock had lost 95% of its value and the company suffered "a large scale worldwide layoff." 2004 U.S. Dist. LEXIS 14383, *5 (D. Minn. July 26, 2004).

The financial hardship described in the Complaint does not amount to the financial collapse described in *MoneyGram* and *ADC Telcoms*. Plaintiffs allege that the stock value dropped a little over 50% from 2014 to 2017, that Lifetouch closed brick-and-mortar portrait studio locations and a production facility laying off 206 employees, that many Lifetouch senior executives retired, and that Lifetouch failed to adapt to new technology and consumer needs. These facts demonstrate financial hardship, but not a company on the verge of collapse. Although Lifetouch faced these financial setbacks, the company was valued at and sold for over $800 million in 2018. Accordingly, Plaintiffs fail to state an imprudent investment claim.

## II. Duty to Monitor

Plaintiffs allege that Directors and Lifetouch breached their duty to monitor the Trustees. Fiduciaries have a duty to monitor their appointees, which includes a duty to act if they discover that the appointed fiduciaries are performing improperly. *Crocker*, 782 F. Supp. 2d at 787. Plaintiffs assert that Directors and Lifetouch should have pressured the Trustees to investigate the true value of Lifetouch stock or removed the Trustees from their positions.

Defendants argue that the Court should dismiss Plaintiffs' monitoring claim because it is derivative of Plaintiffs' prudence claim. The Court agrees. Plaintiffs' failure to plausibly allege any breach by the Trustees precludes the monitoring claim. *See Target*, 275 F. Supp. 3d at 1093 (collecting cases) ("Plaintiffs cannot maintain a claim for breach of the duty to monitor . . . absent an underlying breach of the duties imposed under ERISA."). Therefore, the Court dismisses Plaintiffs' failure to monitor claim.

## III. Duty of Loyalty

Plaintiffs assert that Directors and Lifetouch breached their duty of loyalty by artificially inflating Lifetouch stock in 2015 and 2016 so that multiple senior executives were able to retire and cash out in part or in whole at an artificially high stock price. Defendants argue that this claim should be dismissed because it relies on the implausible allegation that senior executives manipulated Lifetouch's stock price.

Fiduciaries must discharge their duties "solely in the interest of the participants and beneficiaries of the plans." *Bigger v. Am. Commercial Lines*, 862 F.2d 1341, 1346

(8th Cir. 1988). "Because the potential for disloyal self-dealing and the risk to the beneficiaries from undiversified investing are inherently great when insiders act for a closely held corporation's ESOP, courts should look closely at whether the fiduciaries investigated alternative actions and relied on outside advisors." *Martin v. Feilen*, 965 F.2d 660, 670-71 (8th Cir. 1992).

Plaintiffs fail to allege self-dealing for the following reasons. First, Plaintiffs did not plausibly allege that senior executives manipulated the financial data. Second, the Trustees relied on an independent appraiser to evaluate the stock value. Third, it is not surprising nor suggestive of malfeasance that senior executives would depart a company experiencing financial hardship. As discussed above, there is no inference of wrongdoing from actions that "one would expect." *Braden*, 588 F.3d at 597.

Moreover, Plaintiffs' loyalty claim largely repeats the allegations of their prudence claim. Because the Court found the artificial inflation claim implausible, the Court also concludes that Plaintiffs' derivative loyalty claim fails. *Target Corp. Sec. Litig.*, 275 F. Supp. 3d at 1090. Thus, the Court dismisses the duty of loyalty claim.

## IV. Dismissal With Prejudice

Rule 12(b)(6) dismissals are typically entered with prejudice. *Phx. Entm't Partners, LLC v. Star Music, Inc.*, 2017 U.S. Dist. LEXIS 195497, at *14 (D. Minn. Nov. 28, 2017) (collecting cases); 2 Moore's Federal Practice § 12.34(5) ("dismissal for failure to state a claim is . . . typically entered as a dismissal with prejudice"). Dismissals with prejudice occur where "no amount of re-pleading will cure [the] deficiencies." *Smith v. Conway*, 2016 U.S. Dist. LEXIS 122632, at *5 (D. Minn. Sep. 9, 2016).

Plaintiffs request a dismissal without prejudice. Plaintiffs explain that Shutterfly filed forms with the SEC on the same day that Plaintiffs filed their Amended Complaint and that these filings provide new information about Defendants' motivation for artificially inflating Lifetouch's stock price. Plaintiffs would amend their complaint to include data summarizing the number of shares executed by senior executives in 2015, 2016 and 2017.

Defendants argue that this data does not support the claim that Lifetouch's stock price was manipulated. The Court agrees. The data supports Plaintiffs' claim that senior executives were leaving the company in 2015 and 2016, but this fact on its own does not suggest malfeasance. As discussed above, it is not surprising that senior executives would depart a company experiencing financial hardship. Because Plaintiffs' proposed amendment would not cure Plaintiffs' failure to state a claim, the Court dismisses the action with prejudice.

# **CONCLUSION**

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants Lifetouch, Board of Directors and Trustees' motion to dismiss [ECF No. 56] is GRANTED.

2. Defendant Newport Trusts' motion to dismiss [ECF No. 50] is DENIED AS MOOT.

3. This action is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: November 7, 2018

                                             s/ Joan N. Ericksen
                                             JOAN N. ERICKSEN
                                             United States District Judge